**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF MARYLAND**

NORTHERN DIVISION
TOWER II, 9TH FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND 21201-2705
TEL: (410) 962-3962
FAX: (410) 962-0872

JAMES WYDA
FEDERAL PUBLIC DEFENDER

JONATHAN HETTLEMAN
ELIZABETH LOPEZ
ASSISTANT FEDERAL PUBLIC DEFENDERS

September 20, 2024

The Honorable Stephanie A. Gallagher
United States District Court for the District of Maryland
101 West Lombard Street
Baltimore, MD 21201

    Re: *United States v. Darrand Sykes*, SAG-24-135

Dear Judge Gallagher:

    Mr. Sykes writes in advance of the arraignment, plea, and sentencing hearing in the above-captioned case scheduled for next Wednesday September 25, 2024, at 10:00 a.m. Mr. Sykes is prepared to plead guilty to Count I of the indictment, which charges him with unlawful possession of a machinegun in violation of 18 U.S.C. § 922(o). Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties have agreed that the appropriate sentence in this case is 30 months' imprisonment consecutive to the 3-year sentence Mr. Sykes received on September 19, 2024 in the Circuit Court for Harford County (Criminal Case No. C12CR20000377) for violating his probation.

    That said, the conduct to which Mr. Sykes will plead guilty is not reflective of his character. Mr. Sykes is a kind, thoughtful, young man who comes from a loving and supportive family. His limited criminal history reflects that, especially because it did not begin until Mr. Sykes was 19 years old—a relatively late age compared to many defendants who appear before this Court. Mr. Sykes recognizes the seriousness of this offense, and he knows that he must use this experience, and his upcoming period of incarceration, to prepare himself for a law-abiding, productive, future. Mr. Sykes is eager to accept responsibility for this offense, begin his sentence, and move on with his life.

    **I.**    <u>**Sentencing Guidelines**</u>

    The parties agree that the adjusted offense level, after acceptance of responsibility, is 21. This case was negotiated based on the parties' understanding that Mr. Sykes's criminal history fell into category I, which yielded a guidelines range of 37-46 months. However, because Mr. Sykes received a 3-year sentence on his violation of probation ("VOP") in Harford County on September

19, 2024, he now receives 3 points for that conviction under United States Sentencing Guidelines ("USSG") § 4A1.1(a). Prior to being sentenced on the VOP, however, he only received 1 point for that conviction and probation before judgment sentence. Technically, then, as of September 25, 2024, Mr. Sykes has 3 criminal history points, which pushes him into criminal history category II and would result in a guidelines range of 41-51 months.

The fact that Mr. Sykes falls into criminal history category II, though, is purely a function of scheduling, rather than a reflection of the guidelines range that is appropriate in this case and that informed the parties' negotiations. From the outset of this case, the parties here have worked together with our state counterparts to negotiate the global resolution to which Mr. Sykes has agreed. The parties could have ensured (and originally intended to ensure) that Mr. Sykes was sentenced in this case before being sentenced on the VOP for the sole purpose of keeping him in criminal history category I. However, based on both courts' schedules, efficiency, and because the parties have agreed on the appropriate sentence in this case irrespective of the technical increase in Mr. Sykes's criminal history category, undersigned counsel felt comfortable allowing Mr. Sykes to proceed with sentencing on the VOP before being sentenced in this case.

United States Sentencing Guideline § 4A1.3(b)(1) allows this court to depart downward from a defendant's criminal history category if that category "over-represents the seriousness of the defendant's criminal history." As explained above, Mr. Sykes only falls into criminal history category II because he was sentenced on his state VOP before being sentenced in this case. Criminal history category II, therefore, over-represents the seriousness of Mr. Sykes's criminal history because it is more reflective of the order in which Mr. Sykes's sentencing hearings occurred than it is a true representation of his criminal history. This Court should, therefore, grant a downward departure of one criminal history category under § 4A1.3(b)(1) to preserve Mr. Sykes's status in criminal history category I.[1]

After a downward departure of one criminal history category, this Court should find that the applicable guidelines range in this case is 37-46 months based on a criminal history category I and an offense level of 21.

II. **A Sentence of 30-Months Consecutive to the 3-Year State Sentence Is Sufficient but Not Greater than Necessary to Meet the Goals of Sentencing Set Forth in 18 U.S.C. § 3553(a)**

The parties here—in conjunction with our state counterparts—have agreed that an aggregate 66-month sentence is the appropriate resolution to this case and Mr. Sykes's Harford County VOP. Specifically, the sentence strikes an appropriate balance between the seriousness of the offense, Mr. Sykes's young age, his background, and his lack of a significant criminal history.

---

[1] The language of the plea agreement arguably precludes the parties from raising guidelines arguments apart from those explicitly set forth in the agreement. However, undersigned counsel conferred with counsel for the government who has no objection to the defense making the over-representation argument explained above notwithstanding the language in the plea agreement.

Mr. Sykes is 23 years old. He was born in West Baltimore and lived there until he was 3 years old with his parents, Darrand Sykes and Danielle Froneberger. When he was approximately 13 years old, the family moved to Cherry Hill. A few years later, they moved to the Walbrook neighborhood near Coppin State University, where Ms. Froneberger still lives and where Mr. Sykes lived until his arrest. When Mr. Sykes was 15 years old, Ms. Froneberger and his father broke up after having been together for approximately 17 years. Their split was difficult for Mr. Sykes and his two younger siblings. At a vulnerable time in his life, Mr. Sykes went from having a father who was present and living with Mr. Sykes and his family to having relatively infrequent contact with his father. In addition, Ms. Froneberger reports that around this time, Mr. Sykes was still attending school in Cherry Hill even though the family had already moved to the Wallbrook neighborhood in the northwest part of the city. As a result, it became more difficult for Ms. Froneberger to keep an eye on Mr. Sykes and eventually his behavior began to reflect the turmoil in his life.

Growing up, Mr. Sykes struggled with truancy in school. Nonetheless, he came very close to graduating high school but fell just short of the requirements needed to finish 12th grade. Mr. Sykes also worked several jobs: he worked at the Port of Baltimore through a summer program unloading containers; he worked for a summer at Carroll Park golf course through a Youth Works program; and, most recently, he worked for Von Paris moving company out of Savage, Maryland between 2020-2021. Mr. Sykes has a strong work ethic and a hunger for learning and skill-development that will ensure his return to the workforce upon his release.

Given Mr. Sykes's age, his brain is still developing. "Advances in neuroscience have shown that the brain undergoes important changes during and beyond adolescence into early adulthood[.]" Erika Fountain, et al., *Treating Emerging Adults Differently: How Developmental Science Informs Perceptions of Justice Policy*, 7 TRANSLATIONAL ISSUES IN PSYCHOLOGICAL SCIENCE 65 (2021) at 66. These changes are especially pronounced in the frontal lobes of the brain, which control "'executive functions' such as planning, working memory, and impulse control." Sara B. Johnson et al., *Adolescent Maturity and the Brain: The Promise and Pitfalls of Neuroscience Research in Adolescent Health Policy*, 45 J. ADOLESC. HEALTH 216 (2009). The frontal lobes "are among the last areas of the brain to mature; they may not be fully developed halfway through the third decade of life." *Id.* That is why the Supreme Court has repeatedly recognized that "youth matters in sentencing." *Jones v. Mississippi*, 593 U.S. 98, 105 (2021); *Miller v. Alabama*, 567 U.S. 460, 471 (2012); *Roper v. Simmons*, 543 U.S. 551, 569-70 (2005).

At 23 years old, Mr. Sykes is certainly old enough to appreciate the seriousness, and the consequences, of the conduct that led to his prosecution. At the same time, his brain—and, in particular, the portion of his brain that will hopefully drive him toward better decision-making in the future—is almost certainly still developing. That is no excuse for the offense Mr. Sykes committed, but it does help to understand it. And it should weigh in Mr. Sykes's favor as this Court balances the § 3553(a) factors.

Mr. Sykes's relatively limited criminal history is also noteworthy. His 2020 conviction in Harford County for a misdemeanor burglary offense is his only prior conviction, and it resulted in a sentence of probation before judgment. Thus, this will be Mr. Sykes's first felony conviction and

3

his first period of incarceration. The effects of this sentence will, therefore, impact Mr. Sykes for the rest of his life.

Mr. Sykes also takes his rehabilitation very seriously. He reports that since he has been incarcerated at the Harford County Detention Center, he regularly attends church services and has enrolled in a program called "Overcomers" which is a faith-based rehabilitation program.[2] Mr. Sykes hopes to continue to take advantage of as much programming as he can during his state sentence and in the Bureau of Prisons. At a minimum, he hopes to obtain his GED and enroll in a Commercial Driver's License program.

A 30-month sentence consecutive to 3 years is a significant period of incarceration for a 23-year-old with only a single prior misdemeanor conviction. At the same time, the downward variance requested is justified by Mr. Sykes's age, his upbringing, his limited criminal history, his efforts toward rehabilitation during his incarceration so far, and the 3-year VOP sentence he is currently serving.

### III.   Conclusion

For these reasons, Mr. Sykes respectfully requests that this Court sentence him to 30 months' imprisonment consecutive to the 3-year sentence he received on September 19, 2024 in the Circuit Court for Harford County in Criminal Case No. C12CR20000377.

Respectfully,

/s/

Jonathan Hettleman
Elizabeth Lopez
Assistant Federal Public Defenders

cc: James Hammond, AUSA

---

[2] Undersigned counsel requested these records from the Harford County Detention Center but have not received a response.